# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **WILLIE ABNER, et al.** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | |
| **v.** | ] | **2:15CV-02040-KOB** |
| | ] | |
| **UNITED STATES PIPE & FOUNDRY,** | ] | **This Document Relates to All Cases** |
| **COMPANY, LLC, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION

When does an amended complaint adequately state a claim and comply with a court's prior order to provide a more definite statement?  This memorandum opinion attempts to address that question in the specific context of these 14 consolidated cases, which involve 683 Plaintiffs' allegations that Defendants operated a pipe-making facility in Birmingham, Alabama that released harmful chemical contaminants into areas occupied or frequented by Plaintiffs, causing personal injury and property damage.  Defendants are two companies associated with the pipe-making facility: United States Pipe & Foundry Company, LLC, and Mueller Water Products, Inc.  All of Plaintiffs' amended complaints assert wantonness, negligence per se, and punitive damages claims.  Twelve of the amended complaints also assert negligence claims, and the other two instead assert wrongful death claims.  Finally, four of the amended complaints assert nuisance and trespass claims.  *See* App'x A (Chart of Claims by Case).  The court will refer to the claims of wrongful death, wantonness, negligence, negligence per se, and punitive damages as "the personal injury claims," and the claims of nuisance and trespass as "the property damage claims."

Mueller has moved to dismiss all 14 amended complaints for failure to comply with this court's order to provide a more definite statement and for failure to state a claim.  U.S. Pipe has moved to dismiss or strike all of the claims raised in 13 of the 14 amended complaints, and four of the six claims raised in the remaining amended complaint, for failure to comply with this court's order to provide a more definite statement.  (Docs. 94 and 95 in 2:15-cv-02040-KOB; Docs. 91 and 92 in 2:15-cv-02045-KOB; Docs. 90 and 91 in 2:15-cv-02046-KOB; Docs. 90 and 91 in 2:15-cv-02047-KOB; Docs. 87 and 88 in 2:15-cv-02048-KOB; Docs. 103 and 104 in 2:15-cv-02049-KOB; Docs. 90 and 96 in 2:15-cv-02050-KOB; Docs. 88 and 89 in 2:15-cv-02051-KOB; Docs. 102 and 103 in 2:15-cv-02052-KOB; Docs. 92 and 93 in 2:15-cv-02054-KOB; Docs. 92 and 98 in 2:15-cv-2055-KOB; Docs. 92 and 94 in 2:15-cv-02056-KOB; Docs. 89 and 90 in 2:15-cv-02057-KOB; Docs. 31 and 32 in 2:17-cv-00136-KOB).

The court WILL DENY Mueller's motion to dismiss because Plaintiffs state a claim that Mueller merged with U.S. Pipe or otherwise acquired U.S. Pipe's past and continuing liabilities for the Plant; taking the allegations as true, this statement sufficiently states Plaintiffs' basis for asserting a claim against Mueller.  The court WILL DENY Mueller's and U.S. Pipe's motions to dismiss or strike the amended complaints for failure to comply with this court's order to provide a more definite statement of the personal injury claims.

## I.    BACKGROUND

To understand Defendants' current motions to dismiss, the court must briefly summarize Plaintiffs' initial complaints and an earlier round of motions practice.  Plaintiffs' initial complaints alleged that in 1901, a ductile iron foundry ("the Plant") began operating at or around what is now 3000 30th Avenue North, Birmingham, Alabama.  (Doc. 1-1 at 3–4, 6).[1]  In 1911,

---

[1] Unless the court specifies otherwise, citations to the docket are to the lead case, *Abner v. United States Pipe & Foundry Co., LLC*, no. 2:15-cv-02040-KOB.

U.S. Pipe purchased the Plant and soon expanded its operations.  (*Id.* at 6).  In 1969, a company

that would eventually be known as Walter Industries acquired the Plant (and, presumably, U.S.

Pipe), and in 2005, Walter Industries acquired Mueller Water Products, Inc.  (*Id.*).  In 2006, U.S.

Pipe and Mueller were spun off into a publicly traded company that was also called Mueller

Water Products, Inc.  (*Id.*).  The Plant ceased operations in 2010.  (*Id.* at 6).

According to Plaintiffs' initial complaints, while the Plant was operating between 1911

and 2010, it emitted, via the air and groundwater, a number of toxic substances into Collegeville,

North Birmingham, Fairmont, Harriman Park, "and other surrounding areas" ("the

Neighborhoods").  (Doc. 1-1 at 7–8).  The toxic substances included lead, beryllium, benzene,

xylenes, and volatile organic compounds, which, Plaintiffs alleged, are linked to 67 illness,

disorders, and/or conditions ("the Conditions"), and had "an immediate and/or permanent

adverse effect upon human health and the natural environment in which the Plaintiffs lived,

worked, and/or frequented."  (*Id.* at 5, 8–10).  And although the Plant closed in 2010, those toxic

substances still remain in the Neighborhoods.  (*Id.* at 8).  Furthermore, according to Plaintiffs,

U.S. Pipe and Mueller knew or should have known that the Plant was releasing toxic substances

that posed a serious risk to humans, but they continued to release those substances into the

Neighborhoods without warning Plaintiffs of the risks to people and property.  (*Id.* at 12–13).

Plaintiffs alleged that, between 1995 and 2010, they "lived, worked, and/or frequented

one or more locations within the Neighborhoods."  (*Id.* at 15–16).  As a result, they were

exposed to the toxic substances, causing them "significant injuries and damages, including but

not limited to one or more of the [Conditions]."  (*Id.* at 15–16).

At some point in 2012, Mueller sold U.S. Pipe.  (*Id.* at 6–7).  Plaintiffs alleged that "the

sale of the North Birmingham plant did not remove all of the liabilities associated with the

Mueller defendant." (*Id.* at 7). In April 2012, shortly after the sale of U.S. Pipe, the Plant was demolished. (*Id.* at 6–7). Also at some point in 2012, the Environmental Protection Agency began investigating U.S. Pipe and Mueller in connection with the EPA's "35th Avenue Superfund Site." (*Id.* at 10). In 2013, the EPA named U.S. Pipe and Mueller as "potentially responsible part(ies)" for cleanup activities. (*Id.*).

Plaintiffs' initial complaints raised personal injury and property damage claims in various combinations. Defendants moved to dismiss the property damage claims raised in three of the cases, and in all 14 cases, moved for more definite statements of the personal injury claims. (*See* Doc. 88 at 1).

The court granted the motions to dismiss the property damage claims raised in three of the cases, but not the property damage claims raised in the remaining case, because in that one case, Plaintiffs identified the specific property that they owned. (*Id.*; Doc. 87 at 9). The court also ordered Plaintiffs in every case to provide a more definite statement of their personal injury claims. (Doc. 88 at 1–2).

After the court entered those orders, Plaintiffs filed amended complaints in each of the 14 cases. (Doc. 93 in 2:15-cv-02040-KOB; Doc. 90 in 2:15-cv-02045-KOB; Doc. 89 in 2:15-cv-02046-KOB; Doc. 89 in 2:15-cv-02047-KOB; Doc. 86 in 2:15-cv-02048-KOB; Doc. 102 in 2:15-cv-02049-KOB; Doc. 89 in 2:15-cv-02050-KOB; Doc. 87 in 2:15-cv-02051-KOB; Doc. 101 in 2:15-cv-02052-KOB; Doc. 91 in 2:15-cv-02054-KOB; Doc. 91 in 2:15-cv-2055-KOB; Doc. 91 in 2:15-cv-02056-KOB; Doc. 88 in 2:15-cv-02057-KOB; Doc. 30 in 2:17-cv-00136-KOB). The factual allegations are substantially similar to each other and to the allegations made in the initial complaints. Plaintiffs did, however, add some new allegations.

Specifically, Plaintiffs added arsenic to the list of Releases.  (Doc. 93 at 3, 8–9).

Plaintiffs also allege that when U.S. Pipe and the former Mueller Water Products, Inc., spun off

into a new publicly traded company, also called Mueller Water Products, Inc., the new Mueller

"acquired many of the environmental liabilities associated with both past and ongoing operations

of the Plant . . . , including at least partial liability for the Releases alleged in this Complaint."

(*Id.* at 5).  Plaintiffs also alleged that U.S. Pipe "was directly responsible for the ongoing

operation of the Plant or was the direct continuation and successor entity of the prior entities that

operated the Plant."  (*Id.*)  Finally, Plaintiffs added the allegation that they had "owned real

property at one or more locations within the Neighborhoods" affected by the emission of the

Releases.  (*Id.* at 18).  The amended complaints did not, however, give any specific addresses for

those pieces of real property.  (*See generally* Doc. 93).

    As stated above, all 14 of the amended complaints assert claims of wantonness,

negligence per se, and for punitive damages.  Twelve of the 14 amended complaints assert

claims of negligence, and the other two instead assert claims of wrongful death.  Finally, four of

the amended complaints assert claims of nuisance, and past and continuing trespass.  *See*

App'x A.

## II.   DISCUSSION

    A motion to dismiss the complaint attacks the legal sufficiency of the complaint.

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short

and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's

claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957)

(quoting Fed. R. Civ. P. 8(a)).  Rule 8 does not require "detailed factual allegations," *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47), but it does

"demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009).

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  To survive a party's motion to dismiss for failure to state a claim, "the plaintiff must plead 'a claim to relief that is plausible on its face.'"  *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  At this stage, the court must accept as true the allegations in the complaint and construe them in the light most favorable to the plaintiff. *Id.*

Rule 12 also permits a party to move for a more definite statement if the pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "If the court orders a more definite statement and the order is not obeyed . . . , the court may strike the pleading or issue any other appropriate order."  *Id.*  And under Federal Rule of Civil Procedure 41, the court may dismiss an action or a claim for failure to comply with the court's order.  Fed. R. Civ. P. 41(b) ("If the plaintiff fails to . . . comply with . . . a court order, a defendant may move to dismiss the action or any claim against it.").  But the court may not dismiss an action or claim with prejudice unless the court finds that the party has engaged "in a clear pattern of delay or willful contempt (contumacious conduct)," and "lesser sanctions would not suffice."  *Betty K Agencies, Ltd. V. M/V MONADA,* 432 F.3d 1333, 1337–38 (11th Cir. 2005).

A.  Failure to State a Claim

Mueller moves to dismiss all 14 amended complaints on the basis that none of them alleges that Mueller operated or was otherwise responsible for the activities at the Plant.

(Doc. 94 at 5–6).  Mueller does not argue that Plaintiffs fail to state a claim as to the elements of

any of their claims; instead, it contends that Plaintiffs fail to state a claim as to *its* liability

because they do not allege any facts showing "how Mueller could have conducted, controlled, or

been responsible for the Plant's operations given that U.S. Pipe was 'directly responsible' for the

Plant's 'ongoing operation' at all relevant times."  (*Id.* at 6).

According to the amended complaints, U.S. Pipe has been operating the Plant since 1911,

and has been "directly responsible for the ongoing operation of the Plant."  (Doc. 93 at 4–5).  In

1969, Walter Industries acquired the Plant, and in 2005, Walter Industries acquired Mueller.  (*Id.*

at 4–5).  In 2006, Mueller and U.S. Pipe spun off into a new publicly traded company, also called

Mueller.  (*Id.* at 5).  According to the amended complaints, although U.S. Pipe continued

operating the Plant, Mueller "acquired many of the environmental liabilities associated with both

past and ongoing operations of the Plant . . . , including at least partial liability for the Releases

alleged in this Complaint."  (*Id.*).

Under Alabama law:

> Liability of a successor corporation under corporation law is largely
> dependent on the form of the acquisition.  When corporations merge, the
> successor remains liable for its predecessors' liabilities.  This result is also
> obtained where, regardless of the denomination of the transaction by the parties,
> the acquisition constitutes a de facto merger.  When, on the other hand, a
> corporation purchases the assets of another company the transferee is generally
> not liable unless (1) there is an express agreement to assume the obligations of the
> transferor, (2) the transaction amounts to a *de facto* merger or consolidation of the
> two companies, (3) the transaction is a fraudulent attempt to escape liability, or
> (4) the transferee corporation is a mere continuation of the transferor.

*Rivers v. Stihl, Inc.*, 434 So. 2d 766, 771 (Ala. 1983) (citations omitted).

The amended complaints do not allege that Mueller was itself involved in the operation

of the Plant; instead, they allege that Walter Industries owned both U.S. Pipe, which operated the

Plant, and Mueller; and that in 2006, Walter Industries spun Mueller and U.S. Pipe off into a new

company, also called Mueller. (*See* Doc. 90 at 4–5). Those factual allegations, viewed in the light most favorable to Plaintiffs, state a claim, under Alabama law, that in 2006, Mueller and U.S. Pipe merged or that Mueller assumed U.S. Pipe's obligations. And, under Alabama law, a merger or express assumption of liabilities would mean that Mueller is liable for U.S. Pipe's pre-merger liabilities, as well as any liabilities arising after the alleged merger. *See Stihl*, 434 So. 2d at 771. As a result, the amended complaints state a claim that Mueller, as well as U.S. Pipe, is liable for the Releases. The court WILL DENY Mueller's motions to dismiss the amended complaints for failure to state a claim.

      B. <u>Failure to Comply with this Court's Order to Provide a More Definite Statement</u>

Mueller moves, under Rule 12(e), to dismiss the personal injury claims in all 14 amended complaints for failure to comply with this court's order to provide a more definite statement of those claims. (Doc. 94 at 4–5). U.S. Pipe moves to dismiss all of the claims asserted in 13 of the amended complaints for failure to comply with this court's order to provide a more definite statement of the claims. (Doc. 95). In the last case, *Todd-Kelley*, no. 2:17-cv-00136-KOB, U.S. Pipe moves to dismiss or strike only the personal injury claims for failure to comply with this court's order. (Doc. 32 in 2:17-cv-00136-KOB).

      *i. The Personal Injury Claims: Wrongful Death, Wantonness, Negligence,*
      *Negligence Per Se, and Punitive Damages*

All 14 initial complaints raised personal injury claims in various combinations. *See* App'x A (Chart of Claims by Case). In this court's earlier order, the court found that Plaintiffs' personal injury claims were so "vague and ambiguous" that they left "the reader to guess at precisely what the plaintiff[s are] claiming[,] in violation of [Federal] Rule [of Civil Procedure] 8(b), *as to* each Defendants' role in causing Plaintiffs' injuries." (Doc. 87 at 11) (emphasis and first alteration in original) (quotation marks omitted). The court stated that "Defendants must

guess at how each Defendant supposedly committed the purported emissions; the need for more specificity is particularly relevant given that Mueller did not acquire an interest in the pipe-making plant until 2006, but the complaint refers to injuries caused during the period between 1985 and 2010." (*Id.* at 11–12).

Plaintiffs' amended complaints all raise the same personal injury claims as their initial complaints did. The amended complaints, however, add the allegation that "United States Pipe and Foundry Company, LLC was directly responsible for the ongoing operation of the Plant or was the direct continuation and successor entity of the prior entities that operated the Plant," and Mueller "acquired many of the environmental liabilities associated with both past and ongoing operations of the Plant." (Doc. 93 at 5).

Contrary to Defendants' contention, those additions comply with this court's order to provide a more definite statement. The amended complaints allege that the Plant emitted various toxic substances into the Neighborhoods; that U.S. Pipe operated the Plant; and that in 2006, Mueller took on at least some of the liabilities associated with operation of the Plant. Sufficient information exists for Defendants to respond to the allegations. *See* Fed. R. Civ. P. 12(e) (permitting the court to grant a motion for a more definite statement if the pleading is "so vague or ambiguous that the party cannot reasonably prepare a response"). As this court said in its earlier order, "Rule 12(e) must not be employed as an end-run around the 'short and plain statement' rule." (Doc. 87 at 10 (citing *Harris v. Fisher-Price, Inc.*, No. 1:13-cv-00076-KOB, 2013 WL 9861461, at *1 (N.D. Ala. Oct. 24, 2013)).

Plaintiffs have alleged that U.S. Pipe operated the Plant while the Plant was emitting the toxic substances, and that in 2006, Mueller took on some of the liabilities associated with the Plant. The court cannot require Plaintiffs, at this point, to give specific details about how each

emission occurred, or the inner workings of the Plant that allowed the emissions to occur, or exactly what liabilities Mueller assumed in the alleged merger with U.S. Pipe. Defendants are in a better position to provide information on those topics during discovery. The court WILL DENY Mueller's and U.S. Pipe's motions to dismiss the amended complaints for failure to comply with this court's order to provide a more definite statement.

ii. *The Property Claims: Nuisance and Trespass*

Four of the amended complaints raise property damage claims in addition to the personal injury claims discussed above. U.S. Pipe moves to dismiss or strike those claims in three of the cases (*Abner*, no. 2:15-cv-02040-KOB; *Arnold*, no. 2:15-cv-02049-KOB; and *Banks*, no. 2:15-cv-2050), but not in the fourth (*Todd-Kelley*, no. 2:17-cv-00136-KOB). (*See* Doc. 32 in 2:17-cv-00136-KOB). U.S. Pipe asserts that its motion is based on Plaintiffs' failure to provide a more definite statement supporting those claims.[2]

In their initial complaints in *Abner*, *Arnold*, and *Banks*, Plaintiffs alleged, as a basis for their property damage claims, that they "lived, worked, and/or frequented" locations within the Neighborhoods. (Doc. 93 at 18). By contrast, in the initial complaint in *Todd-Kelley*, Plaintiff alleged that she owned real property located at a specific address in Birmingham, Alabama. (Doc. 1-1 at 8, in 2:17-cv-00136-KOB). This court highlighted that contrast: "Defendants do not challenge [the property damage] claims in [*Todd-Kelley*], for the obvious reason that the Complaint identifies the specific property owned by the Plaintiff. The other Complaints lack any such sufficiency." (Doc. 87 at 9). As a result, the court dismissed without prejudice the property damage claims raised in *Abner*, *Arnold*, and *Banks*. (Doc. 88 at 1).

---

[2] Mueller does not address the property damage claims in the part of its motion to dismiss seeking to dismiss claims for failure to comply with the court's order. (*See* Doc. 94 at 4–5). Mueller addresses the property damage claims only with respect to Plaintiffs' purported failure to state a claim against it, which this court has already addressed. (*See id.* at 5–6).

The court cannot dismiss Plaintiffs' property damage claims for failure to obey a court order because the court did not order Plaintiffs to provide a more definite statement of those claims.  (*See id.* at 1–2).  Plaintiffs could not have disobeyed a nonexistent order.  Instead, the court dismissed the property damage claims in *Abner*, *Arnold*, and *Banks* because Plaintiffs had not alleged that they "held any interest in property, whether through ownership, a lease, or something else."  (*See* Doc. 87 at 9); *see Borland v. Sanders Lead Co., Inc.*, 369 So. 2d 523, 529 n.1 (Ala. 1979) (explaining that "conduct which rises to the level of trespass to land, generally speaking, would support a nuisance action"); *id.* at 530 (setting out the elements of a trespass claim, which includes "an interference with plaintiff's exclusive possessory interest").  In other words, this court found that Plaintiffs failed to state a claim for nuisance and trespass because they did not allege facts supporting the elements of those claims, and the court dismissed those claims without prejudice.

The court finds that Plaintiffs have remedied the deficiency.  The amended complaints now allege that Plaintiffs "owned real property at one or more locations within the Neighborhoods."  (Doc. 93 at 18).  Thus, Plaintiffs have alleged that they held an interest in properties that were damaged by the Releases.  U.S. Pipe may obtain in discovery the addresses, parcel numbers, or other documentation providing the specific information it seeks.  *See Harris v. Fisher-Price Inc.*, No. 1:13-cv-00076-KOB, 2013 WL 9861461, at *1 (N.D. Ala. Oct. 24, 2013) (Bowdre, J.) ("[A] party may not use a Rule 12(e) motion to circumvent the short and plain statement requirement or to obtain information that can otherwise be obtained in discovery.").  The court WILL DENY U.S. Pipe's motion to dismiss the claims of nuisance and trespass for failure to comply with this court's order.

C.  Summary

In summary, this court WILL DENY Mueller's motions to dismiss the amended complaints for failure to state a claim.  The court WILL DENY U.S. Pipe's and Mueller's motions to dismiss the amended complaints for failure to comply with this court's order to provide a more definite statement.  The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this 3rd day of January, 2018.

**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE

## Appendix A

## Chart of Claims by Case

| | Wrongful death | Negligence | Wantonness | Nuisance | Negligence per se | Past and continuing trespass | Punitive damages |
|---|---|---|---|---|---|---|---|
| Abner v. United States Pipe & Foundry Co., LLC, 2:15-cv-2040 | | X | X | X | X | X | X |
| Anderson v. United States Pipe & Foundry Co., LLC, 2:15-cv-2045 | | X | X | | X | | X |
| David Adams v. United States Pipe & Foundry Co., LLC, 2:15-cv-2046 | | X | X | | X | | X |
| Shanquice Allen v. United States Pipe & Foundry Co., LLC, 2:15-cv-2047 | | X | X | | X | | X |
| Andrews v. United States Pipe & Foundry Co., LLC, 2:15-cv-2048 | X | | X | | X | | X |
| Arnold v. United States Pipe & Foundry Co., LLC, 2:15-cv-2049 | | X | X | X | X | X | X |
| Banks v. United States Pipe & Foundry Co., LLC, 2:15-cv-2050 | | X | X | X | X | X | X |
| Belinda Allen v. United States Pipe & Foundry Co., LLC, 2:15-cv-2051 | | X | X | | X | | X |
| Michael Adams v. United States Pipe & Foundry Co., LLC, 2:15-cv-2052 | | X | X | | X | | X |
| Berry v. United States Pipe & Foundry Co., LLC, 2:15-cv-2054 | | X | X | | X | | X |
| Adley-White v. United States Pipe & Foundry Co., LLC, 2:15-cv-2055 | | X | X | | X | | X |
| Latisha Allen v. United States Pipe & Foundry Co., LLC, 2:15-cv-2056 | | X | X | | X | | X |
| Adamson v. United States Pipe & Foundry Co., LLC, 2:15-cv-2057 | | X | X | | X | | X |
| Todd-Kelley v. United States Pipe & Foundry Co., LLC, 2:17-cv-136 | X | | X | X | X | X | X |