# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **WILLIE ABNER, et al.** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | |
| v. | ] | **2:15-cv-02040-KOB** |
| | ] | |
| **UNITED STATES PIPE & FOUNDRY,** | ] | **This Document Relates to All Cases** |
| **COMPANY, LLC, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION

This memorandum opinion addresses motions for partial summary judgment jointly filed by both Defendants, asserting that Alabama's statute of limitations bars the claims of 601 of the 657 Plaintiffs. (Doc. 104 in 2:15-cv-02040-KOB; Doc. 104 in 2:15-cv-02045-KOB; Doc. 102 in 2:15-cv-02046-KOB; Doc. 102 in 2:15-cv-02047-KOB; Doc. 99 in 2:15-cv-02048-KOB; Doc. 115 in 2:15-cv-02049-KOB; Doc. 103 in 2:15-cv-02050-KOB; Doc. 100 in 2:15-cv-02051-KOB; Doc. 114 in 2:15-cv-02052-KOB; Doc. 104 in 2:15-cv-02054-KOB; Doc. 105 in 2:15-cv-2055-KOB; Doc. 105 in 2:15-cv-02056-KOB; Doc. 101 in 2:15-cv-02057-KOB; Doc. 43 in 2:17-cv-00136-KOB).[1]

These 14 consolidated cases involve Plaintiffs' allegations that Defendants operated a pipe-making facility in Birmingham, Alabama that released harmful chemical contaminants into areas occupied or frequented by Plaintiffs, causing personal injury and property damage. Defendants are two companies associated with the pipe-making facility: United States Pipe & Foundry Company, LLC, and Mueller Water Products, Inc. All of Plaintiffs' amended

---

[1] Unless the court specifies otherwise, citations to the docket are to the lead case, *Abner v. United States Pipe & Foundry Co., LLC*, no. 2:15-cv-02040-KOB.

complaints assert wantonness, negligence per se, and punitive damages claims. Twelve of the amended complaints also assert negligence claims, and three assert wrongful death claims. Finally, four of the amended complaints assert nuisance and trespass claims. *See* App'x A (Chart of Claims by Case). The court will refer to the claims of wrongful death, wantonness, negligence, negligence per se, and punitive damages as "the personal injury claims."

Because the court concludes that the "federally required commencement date" provided in the federal Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) may apply in these cases, the court WILL DENY Defendants' motions for partial summary judgment.

## I. BACKGROUND FACTS

Plaintiffs allege that Defendants (or predecessors of Defendants) operated a ductile iron foundry from early in the 20th century until 2010, when the Plant closed. (Doc. 93 at 1–2, 4; Doc. 107-2 at 6, 9–10).[2] According to Plaintiffs, while the Plant was operating, it emitted, via the air and groundwater, a number of toxic substances into Collegeville, North Birmingham, Fairmont, Harriman Park, "and other surrounding areas" ("the Neighborhoods"). (Doc. 93 at 6–7). The toxic substances included lead, arsenic, beryllium, benzene, xylenes, and volatile organic compounds, which, Plaintiffs allege, are linked to 67 illness, disorders, and/or conditions ("the Conditions"), and had "an immediate and/or permanent adverse effect upon human health and the natural environment in which the Plaintiffs lived, worked, and/or frequented." (*Id.* at 3, 7–13). As a result, they were exposed to the toxic substances, causing them "significant injuries and damages, including but not limited to one or more of the [Conditions] and damage to their real property in the Neighborhoods." (*Id.*).

---

[2] The court draws much of its description of the Plant's history from Plaintiffs' amended complaints.

In an undated informational release from the Environmental Protection Agency, entitled "Cleanup Process in the North Birmingham Environmental Collaboration Project," the EPA stated that it had created a "Superfund Site," which included an area known as the "35th Avenue Superfund Site," composed of Collegeville and parts of Fairmont and Harriman Park. (Doc. 107-1 at 4–5). The EPA collected soil samples in approximately 1,100 residential properties within the 35th Avenue Superfund Site and, in some unspecified number of the samples, found arsenic, lead, polycyclic aromatic hydrocarbons, and benzoapyrene. (*Id.* at 5; Doc. 107-4 at 3).

In December 2012, the EPA issued to U.S. Pipe an "Information Request" about the 35th Avenue Superfund Site. (*See* Doc. 107-2 at 2). In March 2013, Mueller responded to that request on U.S. Pipe's behalf, and in April 2013, Mueller provided a supplemental response. (*Id.*; Doc. 107-3). In September 2013, the EPA identified, among other companies, U.S. Pipe as a "potentially responsible part[y]" for the contamination of the Site. (Doc. 107-1 at 5; Doc. 107-4). Specifically, the EPA notified Defendants that it had "determined that U.S. Pipe . . . may be responsible under CERCLA for cleanup of the Site or costs the EPA incurs in cleaning up the Site." (Doc. 107-4 at 2). The EPA "offer[ed] [U.S. Pipe] the opportunity to perform certain removal activities at the Site." (*Id.*). U.S. Pipe declined that offer. (Doc. 107-1 at 5).

According to the undated informational release, in 2014, the EPA began cleanup to remove contaminated soil found at 52 of the most highly contaminated properties. (Doc. 107-1 at 5). It has removed over 20,000 tons of contaminated soil so far. (*Id.*). The EPA has also begun to "address" another 260 properties and has sought access to an additional 900 properties for sampling. (*Id.*).

In 14 separate amended complaints, Plaintiffs assert claims of wantonness, negligence per se, and for punitive damages. Twelve of the 14 amended complaints also assert claims of

negligence, and three assert claims of wrongful death. Only four of the amended complaints assert property damage claims—specifically, claims of nuisance and past and continuing trespass.

In an earlier round of motions practice, Defendants moved for summary judgment as to the personal injury claims made by Plaintiff Eugene Maddox relating to his alleged hearing loss. *Arnold v. U.S. Pipe & Foundry Co., LLC*, __ F. Supp. 3d __, 2017 WL 1196883, at *1 (N.D. Ala. Mar. 31, 2017). Mr. Maddox's opposition to the motion contained very little evidence: he submitted the results from a google search for "hearing loss causes," (doc. 77-1); and the EPA's offer to negotiate with U.S. Pipe, (docs. 77-2, 77-3).

This court granted summary judgment in favor of Defendants, holding that Alabama's two-year statute of limitations for toxic substance exposure claims applied. The court considered three potential triggering dates: (1) Alabama's "date-of-last-exposure triggering date," applicable to cases in which the injury occurred before January 26, 2006; (2) Alabama's "date-of-diagnosis triggering date," applicable in cases in which the injury occurred on or after January 26, 2006; or (3) the CERCLA commencement date, which is applicable in cases in which the plaintiff proves facts that could support a CERCLA claim. *Id.* at *3–5.

The court held that under either of Alabama's triggering dates, Mr. Maddox's complaint, filed in September 2015, came too late. *Id.* at *3. And it held that Mr. Maddox could not use the CERCLA commencement date because he had "offered no evidence that exposure to hazardous substance released by Defendants into the environment caused his hearing loss." *Id.* at *4–5. As a result, the court granted summary judgment to Defendants as to Mr. Maddox's hearing-loss-related personal injury claims. *Id.* at *5.

## II. DISCUSSION

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it 'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.'" *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Cnties. In State of Ala.*, 941 F.2d 1428, 1437–38 (11th Cir. 1991) (citation omitted) (quoting *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting)). Under Alabama law, "the defendant seeking a judgment of dismissal based upon the affirmative defense of limitations has the burden of proof." *Payton v. Monsanto Co.*, 801 So. 2d 829, 834 (Ala. 2001); *see CTS Corp. v. Waldburger*, 132 S. Ct. 2175, 2188 (2014) ("Section 9658 leaves untouched States' judgments about causes of action, the scope of liability, the duration of the period provided by statutes of limitations, *burdens of proof*, rules of evidence, and other important rules governing civil actions.") (emphasis added). Because Defendants move for summary judgment based on Alabama's statute of limitations, they bear the initial burden of proving the absence of a genuine issue of material fact as to the applicability of their statute-of-limitations defense.

5

Once the moving party carries its burden of showing that no genuine issues of material fact exist, the burden shifts to the non-moving party to produce sufficient favorable evidence "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted).

In reviewing the evidence submitted, the court must view all evidence and factual inferences drawn from it in the light most favorable to the non-moving party. *See Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988) (citation omitted). The non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (citation omitted).

U.S. Pipe and Mueller jointly move for summary judgment in each of the 14 consolidated cases. The motions pertain to two groups of Plaintiffs, as Defendants refer to them: (1) the "Exhibit A Plaintiffs" and (2) the "Exhibit B Plaintiffs." (Doc. 104). The Exhibit A Plaintiffs raise only personal injury claims, and Defendants contend that the Alabama statute of limitations bars all of their claims. (*Id.* at 1). The Exhibit B Plaintiffs also bring personal injury claims, but Defendants contend that the Alabama statute of limitations bars only some of those claims.[3] (*Id.*

---

[3] In support of their motions for summary judgment, Defendants submit Excel spreadsheets of the Plaintiffs and claims that they contend are subject to summary judgment. (Docs. 123-1, 123-2). Defendants state that the Excel spreadsheets "reflect consolidated summaries of the relevant information reflected in over 600 Plaintiffs' ADR Questionnaires (verified interrogatories)." (Doc. 104 at 5 n.5). Plaintiffs do not object to the authenticity of the information contained in the Excel spreadsheets. (Doc. 107 at 4).

6

at 1–2). In support of their motions, Defendants submit *only* Exhibits A and B, which list specific Plaintiffs, their conditions, and their dates of diagnosis.

Plaintiffs, who filed their complaints on the same day as Mr. Maddox in September 2015, appear to concede that their claims are untimely under the Alabama statute of limitations, but they contend that they timely filed their claims within two years of the CERCLA commencement date. (Doc. 107 at 7). They argue that this court's earlier order, which rejected the use of the CERCLA commencement date in Mr. Maddox's case, does not prevent their reliance on the CERCLA commencement date because, unlike Mr. Maddox, they *have* presented evidence proving facts that could support a CERCLA claim. (*Id.* at 8).

Defendants reply, first, that Plaintiffs cannot use the CERCLA commencement date because they have not presented evidence proving that they incurred any costs of remediating their properties. (Doc. 108 at 6-8). They also contend, in the alternative, that Plaintiffs cannot prove a CERCLA claim because CERCLA does not contemplate damages for personal injury and property damage claims, but only for remediation of property. (*Id.* at 8). Unlike their first summary judgment motion, they do not argue that Plaintiffs failed to provide evidence that their injuries were caused by the emission of the toxic substances. (*Compare* Doc. 10, in 2:15-cv-02049-KOB, at 9–12, *with* Doc. 108, in 2:15-cv-02050-KOB).

"CERCLA is a comprehensive statute that grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." *United States v. Bestfoods*, 524 U.S. 51, 55 (1998). The statute also "allow[s] private parties to recover expenses associated with cleaning up contaminated sites." *United States v. Atl. Research Corp.*, 551 U.S. 128, 131 (2007); *see* 42 U.S.C. §§ 9607(a), 9613(f).

"In an unusual manner, CERCLA uses preemption to modify state statutes of limitations with respect to state causes of action by imposing a federal discovery rule in some circumstances." *Blankenship v. Consol. Coal Co.*, 850 F.3d 630, 635 (11th Cir. 2017) (emphasis omitted). CERCLA provides:

> In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

42 U.S.C. § 9658(a). The "federally required commencement date" is "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages . . . were caused or contributed to by the hazardous substance or pollutant or contaminant concerned." *Id.* § 9658(b)(4)(A).

In this court's earlier summary judgment order, the court held that "§ 9658's preemption is limited to those cases where facts could support a CERCLA claim." *Arnold*, 2017 WL 1196883, at *4. The court, however, did not lay out the exact requirements for a CERCLA claim because "Mr. Maddox offered no evidence that exposure to hazardous substances released by Defendants into the environment caused his hearing loss." *Id.* at *5. Defendants' current motions for partial summary judgment require the court to revisit the question of what, exactly, a CERCLA claim entails.

Defendants contend that Plaintiffs have not presented evidence creating a genuine issue of material fact about whether they could prove a private-citizen CERCLA claim. (Doc. 108 at 6–8). The Eleventh Circuit has held that a plaintiff asserting that kind of CERCLA claim must demonstrate:

8

1. the site in question is a "facility" as defined in § 101(9) of CERCLA, 42 U.S.C. § 9601(9);

2. a release or threatened release of a hazardous substance has occurred;

3. the release or threatened release has caused the plaintiff to incur response costs consistent with the "national contingency plan" (NCP); and

4. the defendant is a "covered person" under § 107(a) of CERCLA.

*Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496–97 (11th Cir. 1996) (footnote omitted).

Defendants do not contest—but do not concede—that Plaintiffs could prove three of the four elements; they contend only that Plaintiffs cannot prove that they incurred response costs. (Doc. 108 at 7–8). Plaintiffs did not present any evidence—they did not even allege—that they incurred any response costs. Thus, at first glance, it appears that Plaintiffs did not prove facts that could support a private-citizen CERCLA claim, and are not entitled to rely on the CERCLA commencement date.

But, on closer examination, the analysis becomes more complicated. Although the Eleventh Circuit has not expressly addressed when the CERCLA commencement date will preempt the state statute of limitations, it has indicated that a plaintiff need not prove that he could bring a private-citizen CERCLA lawsuit to rely on the CERCLA commencement date.

In *Parker v. Scrap Metal Processors, Inc.*, the plaintiffs filed suit under federal and Georgia law, asserting property damage claims arising from leakage of hazardous waste from the defendants' property onto the plaintiffs' property. 386 F.3d 993, 1000–02 (11th Cir. 2004). Under Georgia's statute of limitations, the plaintiffs' damages would have been limited to those suffered within the four years before the plaintiffs filed suit. *Id.* at 1016. But even though the plaintiffs did *not* raise any type of CERCLA claim and did not allege or prove that they had

incurred response costs, the Eleventh Circuit permitted them to rely on the CERLA commencement date to bypass Georgia's statute of limitations. *Id.* at 1000–02, 1016–17; *see also id.* at 1021 n.5 (Forrester, J., concurring in part and dissenting in part) (stating that the plaintiffs' environmental consultant testified that "[r]emoving any contaminated soil from the [plaintiffs'] property could cost between $25,000 and $45,000," indicating that the plaintiffs had not *yet* incurred any response costs).

The Court in *Parker* did not expressly address whether a plaintiff seeking to rely on the CERCLA commencement date must prove facts that could support a private-citizen CERCLA claim, as opposed to a CERCLA suit brought by the government. *See generally Parker*, 386 F.3d at 1016–17. But a Fifth Circuit decision handed down four years later held that "§ 9658 operates only where the *conditions for CERCLA cleanup* are satisfied. . . . [The plaintiff] must prove that her claims arose from a 'release' of 'hazardous substances' into the 'environment,' as well as other case-specific preconditions establishing that the defendant's 'facility' falls within CERCLA." *Barnes ex rel. Estate of Barnes v. Koppers, Inc.*, 534 F.3d 357, 365 (5th Cir. 2008) (emphasis added); *see also Freier v. Westinghouse Elec. Corp.*, 303 F.3d 176, 183, 197 (2d Cir. 2002) (permitting the use of the CERCLA commencement date in a lawsuit raising only personal injury claims—implying that the plaintiffs did not assert or prove that they incurred any response costs). The Fifth Circuit's *Barnes* decision lines up with the implication contained in the Eleventh Circuit's *Parker* decision: that CERCLA's commencement date preempts the state statute of limitations when the plaintiff can prove facts showing that a defendant is liable to the government *or* a private party under CERCLA for cleanup costs.[4]

---

[4] The court notes that the Fourth Circuit has taken the contrary position that plaintiffs seeking the benefit of the CERCLA commencement date must prove *all* the facts that could support a private-citizen suit under CERCLA. *Blankenship v. Consolidation Coal Company*, 850 F.3d at 637 (holding that the plaintiffs could not use the CERCLA commencement date because

10

The court recognizes that, in the earlier summary judgment order in these consolidated cases, it held that "§ 9658's preemption is limited to those cases where facts could support a CERCLA claim." *Arnold*, 2017 WL 1196883, at *4. The court's ruling today does not contradict its earlier summary judgment order. The CERCLA commencement date does apply only where facts could support a CERCLA claim, but "a CERCLA claim" does not mean only a private-citizen suit under CERCLA; it means "where the conditions for CERCLA cleanup are satisfied." *Barnes*, 534 F.3d at 365

Plaintiffs may show that the conditions for a CERCLA cleanup exist in several ways. They could show that *they* incurred response costs. *See Redwing Carriers, Inc.*, 94 F.3d at 1496–97. Plaintiffs in these consolidated cases have not even attempted to do that. Or they could show that the *EPA* has incurred response costs. *See id.*; 42 U.S.C. § 9607 (setting out the requirements for liability under CERCLA suit brought by the government). That route is the one Plaintiffs followed here. Plaintiffs submitted evidence showing that the EPA has already begun cleanup of properties within at least some of the Neighborhoods identified in the amended complaints. (Doc. 107-1 at 5). Although Plaintiffs did not submit evidence of how much money the EPA has expended on the cleanup, they are not required to do so. Proving that the EPA has done at least some cleanup is enough to establish the basis for a CERCLA claim. *See* 42 U.S.C. § 9607(a) (providing that the owner and operator of a facility is liable for , among other things, "all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan").

---

"[n]ot only have the plaintiffs conceded that they have not 'incurred any cleanup costs,' but the facts they have alleged would not allow the district court to conclude that their claims include or could include costs to clean up a hazardous waste site"). This court finds the Fifth Circuit's holding in *Barnes* more persuasive than the Fourth Circuit's holding in *Blankenship*.

Defendants also briefly argue that "the types of damages sought in Plaintiffs' Complaint—personal injuries and property damage—cannot be recovered under CERCLA." (Doc. 108 at 8). True, CERCLA does not provide a cause of action for personal injury or property damage claims; a private-citizen CERCLA claim is, as discussed above, one in which the plaintiff recoups response costs incurred cleaning up contaminated property. *See Redwing Carriers, Inc.*, 94 F.3d at 1496–97. But a plaintiff need not be able recover damages under CERCLA to benefit from the CERCLA commencement date for the statute of limitations, as long as the plaintiff has proved facts satisfying the requirements for cleanup under CERCLA. *See O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1146 (9th Cir. 2002) ("The effect of [§ 9658(a)(1)] is to ensure that if a state statute of limitations provides a commencement date *for claims of personal injury* resulting from release of contaminants that is earlier than the commencement date defined in § 9658, then plaintiffs benefit from the more generous commencement date.") (emphasis added); *Freier*, 303 F.3d at 183, 197 (permitting use of the CERCLA commencement date for purely personal injury claims raised under state law).

This court finds that Defendants failed to carry their initial burden of affirmatively showing that the CERCLA commencement date cannot apply in these cases. The court emphasizes, however, that Defendants' arguments were limited to the availability of the CERCLA commencement date when a plaintiff failed to prove facts that could support a private-citizen CERCLA claim. The court's opinion is limited to rejecting those arguments. The statute of limitations began running on the CERCLA commencement date, which is "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages . . . were caused or contributed to by the hazardous substance or pollutant or contaminant concerned." 42 U.S.C. § 9658(b)(4)(A). Defendants' motions for partial summary judgment did

not address the specific CERCLA commencement date or dates, and the court makes no findings about that date or dates. This opinion does not hold that Plaintiffs' claims are timely; it holds only that Plaintiffs need not prove that they could bring a private-citizen CERCLA claim to benefit from the CERCLA commencement date.

## III. CONCLUSION

Because Plaintiffs submitted evidence showing that a genuine dispute of material fact about the existence of an underlying CERCLA claim exists, the court WILL DENY Defendants' motions for partial summary judgment. The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this 23rd day of January, 2018.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE

# Appendix A

# Chart of Claims by Case

| | Wrongful death | Negligence | Wantonness | Nuisance | Negligence per se | Past and continuing trespass | Punitive damages |
|---|---|---|---|---|---|---|---|
| Abner v. United States Pipe & Foundry Co., LLC, 2:15-cv-2040 | | X | X | X | X | X | X |
| Anderson v. United States Pipe & Foundry Co., LLC, 2:15-cv-2045 | | X | X | | X | | X |
| David Adams v. United States Pipe & Foundry Co., LLC, 2:15-cv-2046 | | X | X | | X | | X |
| Shanquice Allen v. United States Pipe & Foundry Co., LLC, 2:15-cv-2047 | | X | X | | X | | X |
| Andrews v. United States Pipe & Foundry Co., LLC, 2:15-cv-2048 | X | | X | | X | | X |
| Arnold v. United States Pipe & Foundry Co., LLC, 2:15-cv-2049 | | X | X | X | X | X | X |
| Banks v. United States Pipe & Foundry Co., LLC, 2:15-cv-2050 | X | X | X | X | X | X | X |
| Belinda Allen v. United States Pipe & Foundry Co., LLC, 2:15-cv-2051 | | X | X | | X | | X |
| Michael Adams v. United States Pipe & Foundry Co., LLC, 2:15-cv-2052 | | X | X | | X | | X |
| Berry v. United States Pipe & Foundry Co., LLC, 2:15-cv-2054 | | X | X | | X | | X |
| Adley-White v. United States Pipe & Foundry Co., LLC, 2:15-cv-2055 | | X | X | | X | | X |
| Latisha Allen v. United States Pipe & Foundry Co., LLC, 2:15-cv-2056 | | X | X | | X | | X |
| Adamson v. United States Pipe & Foundry Co., LLC, 2:15-cv-2057 | | X | X | | X | | X |
| Todd-Kelley v. United States Pipe & Foundry Co., LLC, 2:17-cv-136 | X | | X | X | X | X | X |